2004 ND 148

**Dustin Gene JOHNSON, Petitioner and Appellant,**

v.

**North Dakota DEPARTMENT OF TRANSPORTATION, Respondent and Appellee.**

**No. 20040065.**

Supreme Court of North Dakota.

July 22, 2004.

Chad R. McCabe, Vinje Law Firm, Bismarck, N.D., for petitioner and appellant.

Andrew Moraghan, Assistant Attorney General, Office of Attorney General, Bismarck, N.D., for respondent and appellee.

NEUMANN, Justice.

[¶ 1] Dustin Johnson appealed from a district court judgment affirming an administrative hearing officer's suspension of his driving privileges for one year. We hold Johnson's blood test was conducted in accordance with the law, and we affirm.

I

[¶ 2] Officer Kelly Dollinger, a police officer with the city of Mandan, stopped Johnson for speeding in the city limits shortly after 10:00 p.m., on September 22, 2003. After speaking with Johnson, Dollinger smelled alcohol and noticed that Johnson's eyes were bloodshot. Dollinger conducted field sobriety tests and ultimately arrested Johnson for driving while under the influence of intoxicating alcohol. Dollinger read Johnson the implied consent advisory and asked Johnson to submit to a blood test. Johnson consented. Dollinger drove Johnson to the Morton County Law Enforcement Center in Mandan for the blood test, but upon arrival discovered that a nurse would not be available to administer the test until after midnight. Dollinger then drove Johnson to St. Alexius Medical Center in Bismarck and asked a nurse there to withdraw blood from Johnson for the test. The results of the test showed that Johnson had a blood alcohol concentration of .09 percent.

[¶ 3] Johnson was notified by the North Dakota Department of Transportation of its intent to suspend his driving privileges, and he requested a hearing. Johnson argued that his blood test was not conducted in accordance with the law, as required under N.D.C.C. § 39–20–05(2), because Officer Dollinger was outside of his jurisdiction when he requested the hospital nurse to withdraw blood from Johnson for the test. The hearing officer concluded that a law enforcement officer may transport a person outside the officer's primary jurisdiction for purposes of testing for blood alcohol concentration. On October 20, 2003, the Department's hearing officer suspended Johnson's license for one year.

[¶ 4] Johnson filed a timely notice of appeal from the administrative agency decision to the district court. In affirming the hearing officer's decision, the district court concluded Dollinger had authority to transfer Johnson outside the officer's jurisdiction for a chemical test. Judgment was entered on March 9, 2004 affirming the administrative hearing officer's suspension of Johnson's driving privileges.

II

[¶ 5] On appeal, the only issue raised by Johnson is whether his blood test was conducted in accordance with N.D.C.C. § 39–20–02, which provides, in relevant part:

> Only an individual medically qualified to draw blood, acting at the request of a law enforcement officer, may withdraw blood for the purpose of determining the alcohol, drug, or combination thereof, content therein.

The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs our review of

an administrative suspension of a driver's license. *Dettler v. Sprynczynatyk*, 2004 ND 54, ¶ 10, 676 N.W.2d 799. This Court exercises a limited review in appeals involving driver's license suspensions or revocations, and we affirm the agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

*Dettler*, at ¶ 10, 676 N.W.2d 799; N.D.C.C. § 28–32–46. When an appeal involves an interpretation of a statute, a legal question, this Court will affirm the agency's order unless it finds the order is not in accordance with the law. *Phipps v. N.D. Dep't of Transp.*, 2002 ND 112, ¶ 7, 646 N.W.2d 704. The interpretation of a statute is a question of law, fully reviewable on appeal. *State ex rel. Clayburgh v. American West Cmty. Promotions, Inc.*, 2002 ND 98, ¶ 7, 645 N.W.2d 196.

[¶ 6] Section 39–20–02, N.D.C.C., requires a medically qualified person to withdraw blood, for purposes of determining alcohol content, only "at the request of a law enforcement officer." Johnson invites us to construe this statute as requiring Officer Dollinger to have been physically located within his territorial jurisdiction when requesting the medical person to withdraw Johnson's blood. Johnson asserts that Dollinger, who was outside the Mandan city limits when he requested the nurse to withdraw blood, was not a "law enforcement officer" for purposes of requesting a blood test under the statute.

[¶ 7] Our primary goal of statutory construction is to ascertain the intent of the legislature. *Gronfur v. N.D. Workers Comp. Fund*, 2003 ND 42, ¶ 10, 658 N.W.2d 337. In ascertaining the legislature's intent, we first look at the plain language of the statute and give every word of the statute its ordinary meaning. *Id.* Words used in a statute are to be understood in their ordinary sense, unless a contrary intention plainly appears. *Id.* We construe the statute as a whole and give effect to each of its provisions, if possible. *American West*, 2002 ND 98, ¶ 14, 645 N.W.2d 196.

[¶ 8] Under our criminal code, the term "law enforcement officer" is defined to mean "a public servant authorized by law or by a government agency or branch to enforce the law and to conduct or engage in investigations or prosecutions for violations of law." N.D.C.C. § 12.1–01–04(17). It is undisputed that Dollinger is a law enforcement officer with the Mandan Police Department. It is also undisputed that Dollinger was acting within his jurisdiction and authority as a law enforcement officer when he stopped Johnson for speeding in Mandan, conducted field sobriety tests at the location of the stop, arrested Johnson, read Johnson the

implied advisory consent, and obtained Johnson's explicit consent to have a blood alcohol test. Nevertheless, Johnson urges this Court to adopt a hypertechnical construction of N.D.C.C. § 39–20–02 that Dollinger, under these circumstances, was not qualified to request a nurse in Bismarck to perform the blood test to which Johnson had given his consent while in Dollinger's territorial jurisdiction.

[¶ 9] There is no dispute that Dollinger is a law enforcement officer and that he was acting within his jurisdiction and with proper authority when he arrested Johnson and obtained Johnson's consent to a blood test. Dollinger transferred Johnson to a Bismarck medical facility for purposes of having the blood test conducted only after learning that no medical person would be available to withdraw blood in Mandan until after midnight, beyond the two-hour testing window under the statute. N.D.C.C. § 39–20–07(3). The clear and unambiguous purpose of the statutory language "at the request of a law enforcement officer" is to enable medical personnel to withdraw blood only at the request of "a public servant authorized ... to engage in investigations ... for violations of law," and not an ordinary citizen. We conclude that under these circumstances, Dollinger was a law enforcement officer within the legislative intent of the statute for the purpose of requesting the nurse in Bismarck to withdraw a blood sample from Johnson.

[¶ 10] This Court has recognized that as a general rule a police officer acting outside his jurisdiction is without official capacity and without official power to arrest. State v. Littlewind, 417 N.W.2d 361, 363 (N.D.1987). However, this case does not involve the authority of a law enforcement officer to make an arrest. Rather, the narrow issue here is whether, under N.D.C.C. § 39–20–02, an arresting officer, who has obtained explicit consent of a suspect to have his blood tested while the officer and suspect are located within the officer's jurisdictional territory, can transfer the arrestee outside the jurisdiction for the test. The statute does not require the blood test either be offered or administered within the jurisdiction where the arrest took place. See Kelly v. S.C. Dep't of Highways, 323 S.C. 334, 474 S.E.2d 443, 445 (1996) (where statute did not require test be administered within jurisdiction where the arrest took place, the arresting officer retained custody to transport arrestee outside the jurisdiction for purposes of administering Breathalyzer test). We conclude that, under these circumstances, Dollinger did have authority under the statute to request performance of the test in Bismarck. This interpretation is consistent with case law of other jurisdictions recognizing that this type of evidence gathering activity by a law enforcement officer is not limited to the officer's territorial jurisdiction. See State v. Stevens, 224 Conn. 730, 620 A.2d 789, 795 (1993); Benolkin v. Comm'r of Public Safety, 408 N.W.2d 710, 712 (Minn.Ct.App.1987); State v. Wagner, 359 N.W.2d 487, 490 (Iowa 1984); State v. MacDonald, 260 N.W.2d 626, 628 (S.D. 1977).

[¶ 11] Johnson relies upon this Court's decision in Davis v. Dir., N.D. Dep't of Transp., 467 N.W.2d 420, 423 (N.D.1991), to support his argument that under N.D.C.C. § 39–20–02 a law enforcement officer's request of a medical person to withdraw blood must be made within the officer's jurisdiction. In Davis this Court concluded that a state police officer who arrested an enrolled member of the Turtle Mountain Band of Chippewa Indians off the reservation for a crime committed off the reservation did not have authority, after transporting the Indian arrestee to the reservation, to ask the arrestee to take a chemical test off the reservation. We held in Davis that the Indian arrestee's rejec-

tion of the test, in response to the officer's unauthorized request that he do so, did not constitute a refusal upon which his driving privileges could be automatically revoked under N.D.C.C. § 39–20–01. *Davis*, at 422.

[¶ 12] The issue and facts in *Davis* are substantially different from the issue and facts before us in this appeal. In *Davis* the arrestee's refusal to take a blood alcohol test had the direct consequence of the arrestee's driving privileges being suspended for an extended period of time. Because the officer was outside his jurisdiction when he requested the arrestee to submit to testing, the request was unauthorized and the arrestee's rejection could not, therefore, constitute a refusal for purposes of automatic license suspension. In this case, the issue is whether an officer may request medical personnel to conduct a chemical test outside the officer's jurisdiction after the officer has obtained, within the officer's jurisdiction, the arrestee's consent to take the test. Only a hyper-technical interpretation of N.D.C.C. § 39–20–02 would require the test itself be conducted within the officer's jurisdiction. *Davis* did not involve an interpretation of N.D.C.C. § 39–20–02 and our decision in *Davis* does not require interpretation of that statute as proposed by Johnson.

### III

[¶ 13] We hold that under N.D.C.C. § 39–20–02 a law enforcement officer who effectuates a proper arrest and consent of the suspect to take a blood test within the officer's territorial jurisdiction can, while outside the officer's jurisdiction, request a qualified medical person to conduct the test. We further hold that Johnson's blood test was conducted in accordance with the statutory requirements and his driving privileges were suspended in accordance with the law. We, therefore, affirm the district court judgment upholding the administrative hearing officer's one-year suspension of Johnson's driving privileges.

[¶ 14] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.