2005 ND 67

**Jerry D. LARSON, Plaintiff and Appellee**

v.

**Glenda A. LARSON, Defendant and Appellant.**

**No. 20040248.**

Supreme Court of North Dakota.

March 23, 2005.

Michael L. Gjesdahl of Gjesdahl & Associates, Fargo, ND, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Glenda Larson appeals a district court order denying her motion to amend a divorce judgment between her and Jerry Larson to include college tuition expenses for the couple's eighteen-year-old daughter. Concluding the district court did not err in holding it may not order post-minority child support for college expenses, we affirm.

I

[¶ 2] Glenda and Jerry Larson were married on May 6, 1978, and divorced on October 29, 1997. The parties had one child, a daughter, from their marriage, who was twelve years old at the time of the divorce. The district court approved the parties' property settlement agreement and awarded joint legal custody of the child to both parents. Glenda Larson was awarded primary physical care of the child, and Jerry Larson was granted reasonable and liberal visitation. The district court ordered Jerry Larson to pay child support in the amount of $1,297 per month until the child graduated from high school or attained the age of nineteen years, whichever occurred first. The district court stated that either party could request a review of the child support payments.

[¶ 3] On March 8, 2004, Glenda Larson sought a modification of the divorce judgment to require Jerry Larson to pay post-minority child support for as long as their child attends college and graduate school. Their daughter graduated from high school in May 2004. She excelled in both academic and extracurricular activities in high school and wants to continue her edu-

Timothy J. McLarnan of McLarnan, Hannaher & Skatvold, P.L.L.P., Moorhead, MN, for plaintiff and appellee.

cation at one of eight prestigious colleges. Glenda Larson argues that she cannot pay the high tuition at these colleges and that Jerry Larson should help pay for their daughter's education. Glenda Larson states that her and her husband's current combined adjusted gross income for a year is roughly the same as tuition at one of the colleges her daughter wants to attend. Glenda Larson claims Jerry Larson has the financial means to contribute to their daughter's college expenses. Glenda Larson argues it is a detriment to their daughter that Jerry Larson will not pay for any college expenses, because colleges consider the income of both parents, regardless of marital status, in determining the amount of student aid available to a child attending college. The daughter's top collegiate choice states in its application material that it expects both natural parents, even when divorced or separated, to provide funds for educational expenses on the basis of each parent's ability to contribute from income and assets. The college also states that both "natural parents will be expected to submit financial information and to provide assistance for the student's college expenses commensurate with their ability rather than their willingness to contribute."

[¶ 4] The district court denied Glenda Larson's motion to award post-minority child support for her daughter, stating it did not have the authority to amend the 1997 divorce judgment.

[¶ 5] Glenda Larson appeals the district court order, arguing the district court erred in finding it did not have authority to amend the original divorce judgment to require Jerry Larson to pay post-minority child support to their daughter for college expenses.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. §§ 28–27–01, 28–27–02. The appeal was timely under N.D.R.App.P. 4(a).

## II

[¶ 7] Glenda Larson argues the district court had authority under N.D.C.C. § 14–09–08.2 to award post-minority child support for her daughter's college education.

[¶ 8] This Court uses the following review for child support determinations:

> Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as a matter of law when it fails to comply with the requirements of the Guidelines. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made.

*Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215 (citations omitted). "Interpretation of a statute is a question of law, fully reviewable on appeal." *Berg v. Berg*, 2000 ND 36, ¶ 24, 606 N.W.2d 895. "In construing a statute, our duty is to ascertain the Legislature's intent, which initially must be sought from the statutory language itself, giving it its plain, ordinary, and commonly understood meaning. We construe statutes as a whole and harmonize them to give meaning to related provisions." *Boumont v. Boumont*, 2005 ND 20, ¶ 8, 691 N.W.2d 278 (citations omitted).

[¶ 9]  The North Dakota statute regarding support for children after majority states, in part:

1.  A judgment or order requiring the payment of child support until the child attains majority continues as to the child until the end of the month during which the child is graduated from high school or attains the age of nineteen years, whichever occurs first, if:

    a.  The child is enrolled and attending high school and is eighteen years of age prior to the date the child is expected to be graduated; and

    b.  The child resides with the person to whom the duty of support is owed.

2.  A judgment or order may require payment of child support after majority under substantially the circumstances described in subsection 1.

    . . . .

6.  This section does not preclude the entry of an order for child support which continues after the child reaches age eighteen, if the parties agree, or if the court determines the support to be appropriate.

N.D.C.C. § 14–09–08.2

[¶ 10]  Jerry Larson argues the district court cannot award post-minority child support, because the parties waived their right to raise the issue by not including it in their divorce agreement.  He argues the issue regarding college expenses was raised by Glenda Larson during the divorce negotiations.  He argues that because she raised the issue during negotiations and he rejected it, and because the divorce judgment has no language reserving the issue for future review by the district court, she waived her right to later request child support for college expenses.

[¶ 11]  This Court has consistently held that parties may not preclude a child from receiving child support, because the right to the support belongs to the child. *Sprynczynatyk v. Celley*, 486 N.W.2d 230, 232 (N.D.1992).  We have said, "Despite an agreement between the divorcing parents, the best interests of children necessitate that a trial court exercise continuing jurisdiction to modify child support." *Sullivan v. Quist*, 506 N.W.2d 394, 397 (N.D. 1993) (citations omitted).  A strong public policy exists that prohibits parental agreements that prohibit or limit the power of a court to modify future child support. *Id.* The original divorce judgment did not waive Glenda Larson's right to petition the district court to modify Jerry Larson's child support payments to pay for college expenses.

[¶ 12]  The basic question is the statutory interpretation of N.D.C.C. § 14–09–08.2.  Glenda Larson argues N.D.C.C. § 14–09–08.2(6) allows a district court to award post-minority child support for college education, because the statute allows for a district court to award child support after the child reaches the age of eighteen "if the court determines the support to be appropriate."  N.D.C.C. § 14–09–08.2(6).  She cites *Donarski v. Donarski*, 1998 ND 128, 581 N.W.2d 130, to support her proposition that child support for college expenses is allowable under North Dakota law.  In *Donarski*, the parties had helped their two older children pay for their college education, and they established a savings fund for their youngest child's college education. *Donarski*, at ¶¶ 16, 23.  In the original divorce judgment, the district court ordered the father to pay for one-half of the youngest child's reasonable college education expenses. *Id.* at ¶ 18.  The father appealed, arguing the district court had no authority to order a parent to pay

support for an adult child. *Id.* A majority of this Court held the district court had the authority to award "post-minority support, including college expenses, under appropriate circumstances." *Id.* at ¶ 19. The majority in *Donarski* cited what they believed to be a "'trend toward awarding moneys for the furthering of education for children, including a college education, by the courts of the various States, even though the parents are divorced.'" *Id.* (quoting *Davis v. Davis,* 268 N.W.2d 769, 778 (N.D.1978), *overruled on other grounds by Nelson v. Trinity Medical Center,* 419 N.W.2d 886 (N.D.1988)).

[¶ 13] The majority in *Donarski* and Glenda Larson both cite *Zarrett v. Zarrett,* 1998 ND 49, 574 N.W.2d 855, and *Davis,* 268 N.W.2d 769, to support the proposition that a district court has the authority to award post-minority support that includes college expenses. *Donarski,* 1998 ND 128, ¶ 19, 581 N.W.2d 130. *Zarrett* and *Davis,* however, are both factually distinguishable from the case at bar. In *Zarrett,* the parties entered into a mutually agreed-upon stipulation that obligated the father to pay college expenses. *Zarrett,* at ¶¶ 2, 14. Jerry Larson and Glenda Larson did not enter into a stipulated divorce agreement that required one of the parties to pay for college expenses. *Davis* is also factually distinguishable because it is a pre-Child Support Guidelines case, which allowed the creation of a trust fund for minor children under N.D.C.C. § 14–05–25. *Donarski,* at ¶ 39 (Sandstrom, J., concurring in part, dissenting in part).

[¶ 14] During the legislative session after the *Donarski* decision, the North Dakota legislature amended N.D.C.C. § 14–09–08.2 by adding a new subsection, which provides: "A judgment or order may require payment of child support after majority under substantially the circumstances described in subsection 1." 1999 N.D. Sess. Laws ch. 143, § 1. Subsection 1 of the statute applies to a child who attains the age of eighteen before graduating from high school. The new subsection 2 allows a court to award child support after majority only under circumstances similar to that of a child who obtains the age of majority before he or she graduates from high school; it does not allow a court to award post-minority child support for college expenses. "When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05; *Ralston v. Ralston,* 2003 ND 160, ¶ 5, 670 N.W.2d 334. The language of subsection 2 is clear. It limits a court's ability to award post-minority child support to substantially the circumstances in subsection 1, which does not include support for college expenses.

[¶ 15] Glenda Larson argues N.D.C.C. § 14–09–08.2(6) allows a court to award post-minority child support for college expenses. Section 14–09–08.2(6), N.D.C.C., allows a court to award post-minority child support in limited circumstances under which parents have a statutory legal duty to support adult children. *Donarski,* 1998 ND 128, ¶ 42, 581 N.W.2d 130 (Sandstrom, J., concurring in part, dissenting in part). The language, "does not preclude," in the statute "makes it clear other statutory circumstances when parents are held responsible for the care of their adult children are 'not preclude[d]' by the provisions of N.D.C.C. § 14–09–08.2." *Id.* This language, coupled with the legislature's actions after *Donarski,* indicates the legislature's intent to limit post-minority child support to circumstances substantially similar to those expressed in the statute. The mere hope that "divorced parents would continue to support their children in seeking college educations . . . is a far cry from concluding a court can impose an

obligation upon the parents to do so as a matter of law." *Donarski*, at ¶ 29 (Vande-Walle, C.J., concurring in part and dissenting in part).

## III

[¶ 16]   Concluding the amended statute prohibits a court from modifying a divorce judgment to include post-minority child support, we affirm the district court's order dismissing Glenda Larson's motion for post-minority child support.

[¶ 17] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, J., concur.

[¶ 18]   The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.

MARING, Justice, dissenting.

[¶ 19]   I respectfully dissent.   I do not agree with the majority's conclusion that the addition of subsection 2 to N.D.C.C. § 14–09–08.2 in 1999 is a clear indication that the legislature intended to limit a trial court's authority to order post-minority support.

[¶ 20]   In 1998, this Court determined that, under N.D.C.C. § 14–09–08.2, a trial court has the authority to order payment of post-minority support, including college education expenses, under appropriate circumstances.   *See Donarski v. Donarski*, 1998 ND 128, 581 N.W.2d 130.   In the next legislative session following the *Donarski* decision, N.D.C.C. § 14–09–08.2 was amended to include the current subsection 2 which reads as follows:

A judgment or order may require payment of child support after majority un-

der substantially the circumstances described in subsection 1.

N.D.C.C. § 14–09–08.2(2).

[¶ 21]   The majority argues that the addition of subsection 2 in the first legislative session post-*Donarski* is indicative of the legislature's intent to limit post-minority child support to only circumstances substantially similar to that allowed under N.D.C.C. § 14–09–08.2(1).   I disagree.

[¶ 22]   I am of the opinion that if it was the legislature's intent to limit a trial court's authority to award post-minority child support in situations other than that described in N.D.C.C. § 14–09–08.2(1), the legislature would have amended N.D.C.C. § 14–09–08.2(6) to explicitly reflect that such an award is limited to circumstances where parents have a statutory duty to support adult children or would have eliminated altogether that part of subsection 6 which states "or if the court determines the support to be appropriate."   The amendment would not have been the addition of the new language of subsection 2. At the time *Donarski* was decided by our Court, N.D.C.C. § 14–09–08.2 read:

1.  A judgment or order requiring the payment of child support until the child attains majority continues as to the child until the end of the month during which the child is graduated from high school or attains the age of nineteen years, whichever occurs first, if:

    a.  The child is enrolled and attending high school and is eighteen years of age prior to the date the child is expected to be graduated; and

    b.  The child resides with the person to whom the duty of support is owed.

2.  The person to whom the duty of support is owed shall file an affidavit with the district court stating that

the requirements of subsection 1 are met. The clerk of court shall serve the affidavit by first-class mail upon the person owing the duty of support. Upon the filing of the affidavit, the child support continues pursuant to subsection 1. If the person owing the duty of support files a motion with the court, within twenty days subsequent to service of the affidavit, requesting a hearing before the district court, the court shall determine if the requirements of subsection 1 are met and shall enter an order accordingly.

3. This section applies to child support orders concerning children described in subsection 1, regardless of the date of entry of the order, provided that the affidavit described in subsection 2 is filed not later than ninety days after the child graduates from high school or reaches age nineteen, whichever comes first.

4. This section does not preclude the entry of an order for child support which continues after the child reaches age eighteen, if the parties agree or if the court determines the support to be appropriate.

N.D.C.C. § 14–09–08.2 (1993). *Donarski* dealt specifically with the interpretation of subsection 4, which became subsection 6 when the legislature amended N.D.C.C. § 14–09–08.2 in 1999. 1999 N.D. Sess. Laws ch. 143, § 1. The wording of these two subsections is identical.

[¶ 23] In *Donarski,* the parties did not agree to an entry of child support which continued after the child turned eighteen. The only authority for the trial court order of an award of college expenses is the language of the statute:

4. This section does not preclude the entry of an order for child support which continues after the child

reaches age eighteen . . . *if the court determines the support to be appropriate.*

*Id.* at ¶ 19 (emphasis added). A majority of our Court held in *Donarski* that this very statutory language granted a trial court authority to extend child support beyond the age of majority for college expenses based upon full consideration of the particular circumstances of each case and described "the factors a court must consider in directing a parent to pay for costs of a child's college education." *Id.* at ¶ 20. We held "a parent cannot be compelled to contribute to an adult child's college expenses if the parent's financial resources are lacking." *Id.* at ¶ 21. Clearly college expenses will not be awarded in every case nor, if they are awarded, will the same amount be awarded in every case.

[¶ 24] As pointed out earlier, the language interpreted and relied on by our Court in *Donarski* has not been changed by the legislature despite the fact it met in 1999, 2001, and 2003.

[¶ 25] The majority in the present case, however, relies on the addition of a new subsection 2 to N.D.C.C. § 14–09–08.2 in 1999 to conclude that the legislature disagreed with our Court's decision in *Donarski* and decided to limit a trial court's authority to enter an order awarding child support beyond graduation from high school or the age of nineteen. The only basis for that interpretation is the timing of the amendment to add the new subsection 2. The majority interprets the new subsection 2 to allow "a court to award child support after majority only under circumstances similar to that of a child who obtains the age of majority before he or she graduates from high school; . . ." and not for college expenses. The majority then attempts to explain away the unaltered language of N.D.C.C. § 14–09–

08.2(6) by incorporating the arguments of the dissenters to the majority opinion of *Donarski*. *Donarski*, 1998 ND 128, ¶ 42, 581 N.W.2d 130 (Sandstrom, J., concurring in part, dissenting in part) and (Vande-Walle, C.J., concurring in part and dissenting in part).

[¶ 26] There is, however, another logical interpretation of N.D.C.C. § 14–09–08.2(2). Subsection 2, which reads, "A judgment or order may require payment of child support after majority under substantially the circumstances described in subsection 1," can be read to require a judgment or order which requires child support to continue "until the end of the month during which the child is graduated from high school or attains the age of nineteen years, whichever occurs first" is subject to the circumstances (a) and (b) described in subsection 1. *See* N.D.C.C. § 14–09–08.2(1)(a) and (b). The requirements of subsection 1 are:

a. The child is enrolled and attending high school and is eighteen years of age prior to the date the child is expected to be graduated; and

b. The child resides with the person to whom the duty of support is owed.

N.D.C.C. § 14–09–08.2(1).

[¶ 27] "We interpret statutes to give meaning and effect to every word, phrase, and sentence, and do not adopt a construction which would render part of the statute mere surplusage. When a statute's language is ambiguous because it is susceptible to differing but rational meanings, we may consider extrinsic aids, including legislative history, along with the language of the statute, to ascertain the Legislature's intent." *State v. Buchholz*, 2005 ND 30, ¶ 6, 692 N.W.2d 105; *see also* N.D.C.C. § 1–02–39.

[¶ 28] Although the available legislative history is limited in this circumstance, there is no indication the legislature enacted N.D.C.C. § 14–09–08.2(2) as a response to our Court's decision in *Donarski*. In fact, the existing legislative history indicates that it was another reason entirely that prompted the legislature to add subsection 2 to N.D.C.C. § 14–09–08.2. The following testimony was offered by Blaine Nordwall on behalf of the Department of Human Services to explain the proposed changes to the statute:

The department supports Senate Bill 2073.

*During discussions with the regional child support enforcement office staff, they raised concerns about the existing administration of section 14–09–08.2.*

- Some clerks were charging a filing fee for filing an affidavit that an 18–year old is still in high school.

- *It has become common for child support orders to require payment of child support after majority, using language parallel to that found in section 14–09–08.2, but which technically removes those orders from the description in subsection 1 (an "order requiring the payment of child support until the child attains majority").*

- Treatment concerning support during summer vacations remains variable.

- *Obligors have complained that they should be permitted to bring a motion to end the child support if an 18–year old drops out of school.*

Senate Bill 2073 resolves all of these problems. It would eliminate the possibility of a filing fee (page 1, line 21). *It would apply the section to orders that already require payment of support after the child's majority (page 1, lines 14 and 15).* It would specify treatment during summer vacations (page 2, lines 14 through 16). *And it would give the obligor both knowledge of where the*

*child is enrolled and an opportunity to ask the court to terminate support if the child leaves high school* (page1, lines 18 and 19, and page 2, lines 2 through 5). For all of these reasons, the Department of Human Services urges this committee to recommend a "do pass" on Senate Bill No. 2073.

*Hearing on S.B. 2073 Before the Senate Judiciary Comm.*, 56th N.D. Legis. Sess. (Jan. 11, 1999) (testimony of Blaine Nordwall, Director, Legal Advisory Unit, Department of Human Services) (emphasis added). It appears the 1999 amendments were made to clarify the administration of the requirements that the child is enrolled and attending high school and living with the custodial parent in order for the extension of support after a child turns 18.

[¶ 29]   The fact that courts were entering judgments that did not end support at the age of majority, but extended support beyond the age of majority took those orders out of N.D.C.C. § 14–09–08.2(1) and it was necessary, therefore, to enact subsection 2 to cover those judgments.

[¶ 30]   The legislature's failure to amend N.D.C.C. § 14–09–08.2(6), along with the absence of any discussion related to restricting a trial court's authority to order post-minority support for college expenses based on *Donarski*, prior to the 1999 addition of N.D.C.C. § 14–09–08.2(2), convinces me that the majority has not correctly ascertained the legislature's intent in this matter.

[¶ 31]   I, therefore, dissent and would remand the case to the trial court to apply the statute and our holding in *Donarski*, 1998 ND 128, 581 N.W.2d 130.

[¶ 32]   Mary Muehlen Maring