Filed 1/19/05 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2005 ND 24

City of Grand Forks, Plaintiff and Appellee

v.

Candace Rae Scialdone, Defendant and Appellant

No. 20040119

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Lawrence E. Jahnke, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Kristen Sue Pettit, Assistant City Prosecutor, P.O. Box 5299, Grand Forks, N.D. 58206-5299, for plaintiff and appellee.

Alexander F. Reichert (argued), and Kelly M. Armstrong (on brief), Reichert Law Office, 405 Bruce Avenue, Suite 100A, Grand Forks, N.D. 58201, for defendant and appellant.

City of Grand Forks v. Scialdone

No. 20040119

Maring, Justice.

[¶1] Candace Scialdone appealed a criminal judgment entered upon a jury verdict finding her guilty of actual physical control of a motor vehicle while under the influence of intoxicating liquor or with an alcohol concentration of at least ten one-

hundredths of one percent by weight.  We affirm.

I

[¶2] After her arrest for being in actual physical control of a vehicle, Scialdone consented to an Intoxilyzer test.  Scialdone requested any material and information subject to disclosure under N.D.R.Crim.P. 16.  On March 23, 2004, before jury selection that day, the City of Grand Forks (“City”) provided Scialdone’s attorney with copies of Intoxilyzer records it intended to introduce at trial the next day.  At trial, Scialdone’s attorney objected to introduction of the Intoxilyzer test results on the ground that the “list of certified testing devices is going to show the machine that was used in this case was actually certified . . . in Bismarck.  Not in Grand Forks,” and “[t]he intoxilyzer training manual says any time the intoxilyzer is moved it has to be recalibrated by a field inspector.”  The court overruled the objection.

[¶3] At trial, Officer Dvorak testified that, according to Exhibit 4, a list of approved chemical testing devices, the machine used in this case was “tested in Bismarck” and the exhibit did not indicate “that machine was recertified by a field inspector after it was moved from Bismarck to Grand Forks.”  During a recess, the City had faxed from the State Toxicologist’s Office several pages of documents, including an exhibit showing the Intoxilyzer machine used in the case had been installed and checked by a field inspector in Grand Forks after it had been moved from Bismarck to Grand Forks.  The court overruled Scialdone’s objections to the exhibit or to testimony by a field inspector, Officer Nelson, who testified she had checked the machine after it had been moved from Bismarck to Grand Forks.

[¶4] The jury returned a verdict finding Scialdone guilty, and a criminal judgment was entered.  Scialdone appealed, raising the following issues:

I. The Intoxilyzer test results should have been excluded from evidence because the foundational requirements showing that the test was administered in accordance with the approved method were not met.

II. Foundational documentation faxed to the prosecutor during trial and surprise witness testimony cannot be admitted into evidence because it is a violation of N.D.R.Crim.P. 16 and Scialdone did not have adequate time to prepare for that evidence or for a cross-examination of the witness.

III. The City violated N.D.R.Crim.P. 16 by not providing documentation pursuant to Scialdone’s reasonable discovery request until the day before trial.

II

[¶5] Scialdone asserts that the evidence initially presented by the City “indicated that this machine was last calibrated in Bismarck” and “[t]he evidence presented by the City through exhibits and the testimony of Officer Dvorak did not support the assertion that the approved method for conducting the breath test had been followed.”  Scialdone contends the Intoxilyzer test results should have been excluded because the City did not meet the foundational requirements necessary to show the test was administered in accordance with the approved method.  For that assertion, Scialdone relies on two sentences contained on page 56 of a 244-page student manual:

Checks on the calibration must be completed each time the Intoxilyzer 5000 is moved.  This is done even when the Intoxilyzer 5000 is moved within an office.

Office of Attorney General, 
Chemical Test Training School for Intoxilyzer 5000 Student Manual
 56 (Fall 2003 and Spring 2004 Training Sessions).

[¶6] Under N.D.C.C. § 39-20-07(5), the results of a chemical analysis must be received in evidence if the sample was properly obtained, the test was fairly administered, and “the test is shown to have been performed according to methods and with devices approved by the state toxicologist.”  “‘The purpose of section 39-

20-07 is to ease the requirements for the admissibility of chemical test results while ensuring that the test upon which the results are based is fairly administered.’”  
Lee v. North Dakota Dep’t of Transp.
, 2004 ND 7, ¶ 10, 673 N.W.2d 245 (quoting 
Ringsaker v. Director, N.D. Dep’t of Transp.
, 1999 ND 127, ¶ 7, 596 N.W.2d 328).  “Whether an Intoxilyzer test has been properly administered can be determined by proving that the method approved by the State Toxicologist has been scrupulously followed.”  
Johnson v. North Dakota Dep’t of Transp.
, 2004 ND 59, ¶ 12, 676 N.W.2d 807.  

[¶7] The first sentence of a June 15, 2003, document entitled “APPROVED METHOD TO CONDUCT BREATH TESTS WITH THE INTOXILYZER 5000 KB-EP” in an exhibit at trial states: “The Approved Method to Conduct Breath Tests With the Intoxilyzer 5000 KB-EP constitutes following the procedure outlined in this document and the instructions displayed by the Intoxilyzer.”  The last sentence of the document states: “When the test is conducted according to this method, it is considered as fairly administered and the result obtained is scientifically accepted as accurate.”  Neither N.D.C.C. § 39-20-07(5) nor the approved method promulgated by the State Toxicologist mentions either the student manual or anything about completing checks on the calibration when an Intoxilyzer 5000 machine is moved.  We conclude that evidence of such checks is not a foundational requirement for showing an Intoxilyzer 5000 test was administered in accordance with the approved method for conducting the test or for admission of the test result into evidence.  
See also
 
City of Bismarck v. Bosch
, 2005 ND 12, ¶ 11 (concluding analytical report and directive “that a standard solution may be used for up to 50 tests is not a part of the approved method” and proof of the number of tests is not a prerequisite to showing fair administration of the test or to admission of the test results); 
Kiecker v. North Dakota Dep’t of Transp.
, 2005 ND 23, ¶ 13 (holding recalibration of Intoxilyzer machines is not part of the method prescribed by the State Toxicologist and proof of recalibration is not a foundational requirement for admission of an Intoxilyzer test result into evidence).

III

[¶8] Upon written request, N.D.R.Crim.P. 16(a)(1)(C), (D) require the prosecuting attorney to disclose evidence within the possession, custody, or control of the prosecution “material to the preparation of the” defense or “intended for use by the prosecutor as evidence in chief at the trial.”  Scialdone contends the faxed documents about checks performed on the machine used after it had been moved from Bismarck to Grand Forks should not have been admitted because it violated N.D.R.Crim.P. 16 and she did not have time to prepare for that evidence or for cross-examination of the field inspector.  While “Scialdone does not contend that the testimony of Officer Nelson was intentionally withheld” and recognized in her appellate brief that “[t]he City did not know until trial that Officer Nelson’s testimony was needed,” she asserts the faxed documents “were to be used to correct the City’s own foundational flaw and to rehabilitate the testimony of their impeached witness.”  Scialdone argues “the City should have been aware of these foundational problems before trial.  Therefore, any testimony they planned to offer regarding the calibration of the Intoxilyzer machine used on Scialdone should have been previously disclosed.”

[¶9] We have already concluded evidence the machine had been checked after being moved is not a foundational requirement for the admission into evidence of an Intoxilyzer 5000 test result.  The challenged documents and testimony were offered as rebuttal evidence.  “The Government is not obligated by Rule 16(a) to anticipate every possible defense.”  
United States v. Gleason
, 616 F.2d 2, 25 (2nd Cir. 1979).  We have held that, if a defendant rebuts the prosecution’s prima facie showing of fair administration of a blood-alcohol test for admission under N.D.C.C. § 39-20-07(5), “the prosecution may present testimony to show fair administration despite defendant’s rebuttal.”  
State v. Erickson
, 517 N.W.2d 646, 648-49 (N.D. 1994).  If Scialdone felt surprised, her remedy was to request a continuance.  
State v. Hirschkorn
, 2002 ND 36, ¶ 9, 640 N.W.2d 439.  “A judgment will not ordinarily be reversed on appeal for surprise when no request is made for a continuance at the time and there is no showing of inability to meet the situation.”  
Id.
  Scialdone did not request a continuance and did not show at trial or on appeal an inability to meet the situation.  

[¶10] Furthermore, Scialdone has not shown that N.D.R.Crim.P. 16 requires advance disclosure of rebuttal evidence.  We note that federal courts construing F.R.Crim.P. 16 have held that the rule does not apply to rebuttal evidence.  
See
 
United States v. Gonzalez-Rincon
, 36 F.3d 859, 865 (9th Cir. 1994) (impeaching evidence is not a relevant statement within the meaning of F.R.Crim.P. 16); 
United States v. Delia
, 944 F.2d 1010, 1017-18 (2nd Cir. 1991) (F.R.Crim.P. 16(a) does not cover rebuttal evidence). 

[¶11] We conclude Scialdone has not shown that the trial court abused its discretion in allowing the faxed documents to be admitted into evidence or in allowing Officer Nelson, a field inspector, to testify that she had checked the machine after it was moved from Bismarck to Grand Forks.

IV

[¶12] Scialdone contends “[t]he City violated N.D.R.Crim.P. 16 by not providing documentation pursuant to Scialdone’s reasonable discovery request until the day before trial.”  Scialdone complains of two sets of documents, the first being foundational evidence for admissibility of the Intoxilyzer test results, and the second being documents faxed during a trial recess. 

[¶13] If Scialdone was surprised by the foundational evidence provided to her before trial, her remedy was to move for a continuance.  
See
 
Hirschkorn
, 2002 ND 36, ¶ 9, 640 N.W.2d 439.  Scialdone’s reliance on 
City of Grand Forks v. Ramstad
, 2003 ND 41, 658 N.W.2d 731, is misplaced, as she, unlike the defendant in 
Ramstad
, did not seek a continuance to examine documents provided on the day of jury selection the day before trial.  We have already addressed the faxed documents and Officer Nelson’s testimony and found no abuse of discretion. Furthermore, Scialdone has not shown that she was prejudiced by the timing of the documents’ provision, and we conclude the trial court did not abuse its discretion in admitting the evidence.  
See
 
Ramstad
, at ¶¶ 25-27.

V

[¶14] The judgment is affirmed.

[¶15] Mary Muehlen Maring

William A. Neumann

Dale V. Sandstrom

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.